Good morning, Your Honors. Paul Reynolds on behalf of Appellant and Defendant, Tenedora de Empresas, SA, de CEDA. This case involves two sophisticated venture capital firms that are fighting over merger proceeds, and plaintiffs represented by counsel failed to negotiate and obtain certain rights to prevent their liquidation preference provisions in the Certificate of Incorporation from being overridden by an automatic conversion. So through this action, they're trying to get the protection that they failed to achieve at the bargaining table through a fiduciary duty claim. The problem, however, is that Delaware law under these circumstances, where you're dealing with uniquely preferred rights embodied in the Certificate of Incorporation, does not allow for fiduciary duty claims. And because the district court based its injunction solely on the claim of automatic conversion on the concept that it breached a fiduciary duty, that injunction must be reversed. Now, there was some briefing about the standard of review. We believe this is a clean legal issue. There is no dispute that the conversion occurred and that the proceeds of the merger were distributed pursuant to a conversion process. So there's really, we know what happened. There's no dispute about that at all. And it's your position that this is simply a contractual matter? Correct. That there's no ethical, no ethical concepts or fair dealing? When you're dealing with matters that are embodied and unique to a preferred shares in a Certificate of Incorporation under Delaware law, primarily out of the Jeb Wab decision that we discussed at some length, but there are many other cases that have followed it as well, that is what Delaware law holds. It draws a distinction between... And I understand there's this Jeb Wab case. Correct. And there's at least some tension, say, with Kumor. Is that right? Well, I don't know if there's really some tension with Kumor. I mean, Kumor is very different in that what was relied on by the majority to prevent the plaintiffs from getting what they wanted was not a uniquely preferred right. They just used their power to control the company to time the merger in a way that harmed the minority, which is not at issue here. So here what was relied on by the majority that foreclosed and removed the liquidation preference was the automatic conversion provision, and that is a uniquely preferred right that is embodied in the Certificate of Incorporation, and it was negotiated between the parties at the time they made their various investments in the company. And here it had nothing to do with the timing of the merger. Not at all. The merger could have occurred at any time. This conversion happened before the merger. There's Delaware law that we've cited that says you can't lump those together as one transaction. That's the Alta Berkeley case. I think it's important to note here also that there's a recent case from August 16th called the Trottos case, and it talks about how venture capitalists invest, and I'll give you the site on that. That is 73rd A3rd at 48. It says venture capitalists invest through preferred stock with highly standardized features. These include a preference upon liquidation and the ability to convert to common stock in lieu of receiving a liquidation preference. That's exactly what happened here, and it's very interesting, these being ubiquitous terms as discussed in this case in VC investments, which most pre-public companies are funded through, that you don't have any case where the Delaware Chancery Court or Supreme Court has ever said you can't do this, majority shareholder, even though it happens all the time. In fact, the only case where this has come up is the Alta Berkeley case, which was only analyzed as a breach of contract. And by the way, it was brought by the same lawyer who brought the Radkin case. These are people who know what they're dealing with. There was a lot of motion practice before this hearing. Certainly. I'm sorry, what? Yes. What's the status of the district court proceedings now? The plaintiff, I'm sorry, yes, the plaintiff moved to augment essentially or amend the order that is up on appeal right now. This court gave it leave to try to do that. There is a motion pending. Well, I know all that. I wouldn't know what's going on in the district court. We don't know. It's under submission. So it could be something. Well, I gather the practical, suppose we agreed with you. Sure. If we then just reverse the preliminary injunction tomorrow, is all the money going to disappear? And that's what the concern is, I understand. Well, I guess. Because you're saying they may well have a viable contract claim. That issue obviously is not before you. I understand. Right. I guess when we brought this appeal, obviously that hadn't happened. Since that has happened and that's pending, I could. No. I didn't do that. I can certainly, I guess, I would understand if the court were inclined to agree with us why you might still keep the injunction in place pending the district court's ruling, which we don't know what it will be, when it will come. But, you know, this is a critical, clean legal issue that is dispositive of large parts of the case. This issue, was this issue presented to Judge Moskowitz? Yes. This was about 95 percent of what was presented to him was this issue. But he didn't read the case law that way. He did not read the case law the way we read the case law, Your Honor. Correct. Do you oppose the injunction staying in place, assuming that we agree with your legal position? Is that something you oppose? I guess I would not oppose that. I would understand why the court would do that. All we need to do is just not move very fast. We're in the same place, right? Well, even if that happened, Your Honor, I would propose, given that this is a pure case, and it's already been briefed and it's been argued, that it's essentially equivalent to a section 1292B, or it's a 1292B case, and it should at least be decided. It would be kind of not a good use of the parties and judicial resources not to decide it. It's really the heart of the case. It's not about disputed facts. It's about what the law is, which is exactly what appellate courts are here for. Who knows what's going to happen, but even if that did happen, I would propose, given the time that's been spent on this and all of us thinking about it and briefing it, that it would be appropriate to decide it. Well, we'll decide it real quick. I mean, you can see the concern. The concern is that if we reverse it now, at least your opponent's concern is that money all goes away, and even if they have a good claim, they're never going to get recovered. Right, which is why I said I guess I... And we refuse to call off the argument because, from my point of view, I want to hear how the pieces fall out to understand that. Sure. Well, tell me in simple terms, would you? Yeah. You've got two contract claims, the voter agreement and the securities transfer agreement. I think they're somewhat interrelated. Essentially, those claims are what I would call the ChinaVest facts. ChinaVest was another VC investor that owned part of the Series A and part of the Series C. Explain to me what those agreements are about. My client acquired ChinaVest's holdings in Series A and Series C. At least with respect to Series A, that is what allowed it to gain a majority. The voting agreement is an agreement that requires its members to vote to elect certain directors that are selected by parties to the voting agreement. Plaintiff's claim is that the voting agreement somehow prohibits the transfer of the ChinaVest shares without their consent, which we very much dispute. That is the issue that is below. That's the contractual claim below. Yeah. I guess that's one of the two contractual claims. The securities transfer agreement is kind of part and parcel of the voting agreement claim. There also is a separate contractual claim that the certificate itself, or at least implied provisions of it, were breached by simply the conversion, which we obviously dispute quite strongly, saying that's exactly what the certificate provides, and we simply exercised a right that is expressly in the certificate. There's another point here. The judge didn't consider those two issues at the time the preliminary injunction was issued. They were briefed. You know, he's a very careful judge. I agree. Very careful judge. They were briefed. The ChinaVest issue was always in the case from the beginning, from the complaint. It wasn't briefed extensively. At the last minute, the day before the preliminary injunction hearing, which we had agreed to postpone about a month to allow it to be briefed properly, the complaint was amended to make that a breach of contract claim, and there was some discussion at the hearing about the ChinaVest issue and about the breach of contract, but obviously it did not make its way into Judge Moskowitz's opinion. Judge Moskowitz thought that the Alta Berkeley case provided, contrary to Jedwab, that if the moving party was on both sides of the transaction, it didn't matter whether it was preferred or come in stock, and why is that wrong? Well, I think how he distinguished the Alta Berkeley case was that, in his view, there were multiple shareholders that voted for that, so it wasn't just one controlling majority shareholder, but we brought up in our reply brief the fact that that overlooks that Delaware law considers shareholders acting as a group pursuant to a contract to have majority power, and that's exactly what happened here. There were lockup agreements in the Alta Berkeley case, so this is discussed in some length in our reply brief at pages 22 and 23, and actually, it's in our opening brief. I'm sorry. It's at the end of our opening brief. Pages 36 and 37, we cite a case called Dubroff v. Wren Holdings, and it says that a number of shareholders can collectively form a control group where those shareholders are connected in some legally significant way, e.g. by contract, common ownership, agreement, or other arrangement to work together towards a shared goal. That's exactly what happened in Alta Berkeley. We had multiple shareholders. They were in lockup agreements with the other party. The final thing is there is this discussion about being on both sides of the transaction and being able to fix the transaction. The transaction here is the conversion. That was negotiated between my client and the plaintiffs and others when the Series C was created, and it was created by the certificate that was amended at that time to create it, and if you look at the requirement for entire fairness analysis, this is a plaintiff's own citation. It's actually to the Jed Webb case. This is at page 21 of their brief. You need three things. You need to have the majority shareholder fix the terms of the transaction to compel its effectuation, and three, have an interest that conflicts with the minority. Well, you might have two and three here, but you don't have one, because what you need is you don't have the majority here using its power to create those terms, because the terms at issue are when can the conversion occur. The plaintiffs could have tried to negotiate a super majority conversion provision where they would always take more than what they had for it to be converted, but they didn't. And that was all negotiated between the parties to this action, and so that's why you can't say that my client is the one that fixed the terms of how the conversion can occur. So I guess what I'd like to do is unless anyone else has any other questions, reserve some time if I have any left. All right. Thank you. Very well. Thank you. Good morning, Your Honors. Kate Demarest. I represent the four individual appellees who are the plaintiffs and were the minority preferred shareholders in neology prior to its merger. Under the preliminary judge and sliding scale approach, there's no issue in this case that we are on one extreme end of the sliding scale continuum. This court has said that the balancing of hardships is the most important factor when it comes to the issuance of a preliminary injunction, and Tenedora has never asserted even a hint of any harm. In fact, counsel says that he has no objection to this preliminary injunction remaining in place pending ruling on an injunction based on our contract claim. So the district court's conclusion that the balance of hardships tips sharply in our favor stands unchallenged, which means all we have to show here is a serious question going to the merits of our fiduciary duty claim. And the district court correctly concluded that we met that burden. What is the standard of review? Isn't this a legal question so that the standard of review would be de novo? Do you agree with that? No. Tenedora emphasizes language from certain cases from this court suggesting that a preliminary injunction will be reversed if the district court got the law wrong. But the question is, in the context of a preliminary injunction, what does it mean to get the law wrong? Tenedora is effectively seeking a ruling from this court as though this were a summary judgment ruling on appeal before you, but it's not. The district court did not make a legal ruling on the ultimate question here. All he said is that there's a serious question, and the fact that that's a serious legal question does not take this appeal out of the abuse of discretion or require this court to conduct really a detailed de novo analysis. Well, isn't what's before us just a strict issue of law, whether this is a contract action or whether you've established or can establish any breach of fiduciary duty here? Why isn't that just a straight question of law? The facts as to that are not disputed, correct? Well, there are indeed, I think, some factual issues that go to that. That bear on that issue? That bear on whether a fiduciary duty can apply, yes. For example, the extent to which Tenedora used its complete control over the corporate machinery of neology in order to effectuate this, the extent to which it had complete control over in order to accomplish this. Use them how? Well, one thing we've learned in discovery is that they were seeking advice from neology's counsel, not Tenedora's separate counsel. Well, I mean, but this was the exercise of a right that they had bargained for. It was in the certificate, correct? They were able to do this. Your client had bargained for this, and they just exercised their rights, purely a matter of contract. Absolutely not. We do not concede that they had any contractual right to do what they did. In fact, that is our argument. But that's the legal question on the contract claim. Yes. But with regard to the fiduciary, as far as I can tell, as to the fiduciary claim, the Delaware law seems to be perfectly clear, of which the last case is Trado's case in 2013, which recites all the laws. It says, you know, as to preferred stock, the special attributes of preferred stock, there is no fiduciary claim. There is a fiduciary claim only with respect to anything that is shared by common stockholders and preferred stockholders. Is that wrong? I think if you look solely at footnotes, there are three or four cases, the most recent of which being Trado's, that simply cite that footnote 6 in general. No, they don't. They actually cite about, there's a footnote 9 here, which cites 1, 2, 3, 4, 5, 6, 7 cases. Not just of footnotes in Jedwab. Well, some of those may cite back to, I'm not sure what those six cases are. Some of them may be like Blue Chip and Corn Vase and Winston, which cite to Jedwab. Jedwab is indeed the primary case on this. And if you look at Jedwab and read it in full, there is not only tension with the Kumar case, which absolutely permits an entire fairness review where a plaintiff is asserting not only a contractual right, but a preferred contractual right that has been invaded by overreaching by the majority shareholder. So there's tension with Jedwab's footnote 6 and Kumar, but there's also internal tension within Jedwab because Jedwab proceeds to do a very detailed analysis. I thought it was deciding two different things. It was deciding three issues having to do with common stock and one having to do with preferred stock. But as to preferred stock, it was perfectly clear. The driving factor in all of the cases is whether or not that majority shareholder had a conflicted interest. And the language that the cases use varies. In some cases, they'll say stand on both sides of the transaction. In some cases, they'll say the controlling shareholder gains what the minority lost. In other cases, they say divided loyalty. But if that's true, I mean, that's the essence of the fiduciary duty claim to begin with. So if you say that when there's conflicting both sides of the transaction, then the preferred stock rule doesn't apply, then you've washed it out. What the courts seem to do over and over again, this was no ordinary conversion. First of all, again, we have side-by-side claims under the certificate. One is the fiduciary duty claim and one is the breach of the good faith and fair judgment certificate. And, you know, one example here is the blue chip case, which cited JEDWAB and dismissed the fiduciary duty claim. But that case said the contract claim could go forward. And, indeed, it dismissed the fiduciary duty claim without prejudice, depending on what was going to happen with that contract claim. And so sometimes these claims overlap in terms of the remedies. And the courts will simply choose which seems to suit better to analyze the single decision on a preliminary injunction as to both would be preferable because these things are not mutually exclusive buckets. They interact. The facts that drive the contract claim and the legal analysis that drives the contract claim interacts with the fiduciary duty claims. And the Rabkin case, all of these are Delaware Chancery Court cases here, except for the Rabkin case, which is the only Delaware Supreme Court case we have in the briefing. And that case makes very clear that a fiduciary duty can apply even if the claim is contractual in nature. And Tenedor's only answer to that case is that it wasn't a preferred right. But there's simply no principled justification between a preferred right and any other kind of contractual right. It was a very similar kind of contractual right being asserted by the plaintiffs in Rabkin. That's the only Delaware Supreme Court authority we have. Well, there was also an argument in Rabkin that they were standing on both sides of the transaction. Yes. And that's not in the sense of this case, correct? I think that it is in the sense of this case because here you have a majority. This was no ordinary conversion. And my client's two declarations at docket 8, which are in our supplemental excerpt, go through in detail exactly what is the purpose of these conversions. And normally the shareholders in a class of preferred stock, their interests are generally aligned and they're generally aligned with those of the corporation. Here you have Tenedor's ownership of classes D, E, and F, which allowed them to basically grab $3 million of merger proceeds from my clients and put it in their own pocket and walk away with it. None of the other cases have that sort of a conversion situation, which is why we argue that the covenant of good faith and fair dealing in the certificate, it was never within the intention of the parties that conversion could be used under such circumstances. Conversion is meant to be used to prevent a minority shareholder from blocking a merger that is in general in the best interest of the company as a whole and all of the shareholders as a whole, not as a mechanism. Well, the common shareholders, those holding common stock, were actually benefited by this transaction, weren't they? No, that's a bit of a red herring, Your Honor. In fact, my client explains that there were 15 common shareholders. Twelve of those received less than $6,500. Of the remaining three, one of them was the deceased brother-in-law of the owner of Tenedora. None of those common shareholders are – Tenedora never said that's why we did this, to benefit these people by this minuscule amount of money, and as a result we just happened to take $3 million for ourselves. Tenedora has asserted no business justification. They haven't asserted that's why they did this or that that would be a valid reason to do it. It's really de minimis amounts to just a few common shareholders. What about the current situation in terms of the proceedings in district court? So the district court could rule at any time that this preliminary injunction, the very one before you, is supported not only by a serious question on the fiduciary duty claim, but also by a serious question on the breach of the covenant of good faith and fair dealing in the certificate itself, and could also expand the injunction in its amount due to Tenedora's acquisition of those ChinaVest shares, which was accomplished through fraud. And by acquiring those shares, our clients would never have permitted Tenedora to acquire those shares, would have acquired them themselves if they had known that it was Tenedora to be the buyer. Tenedora, through fraud, created the impression that two other individual management people were going to be buying those shares, and they basically came in at the last minute and swept them up themselves and kept them. And that is how they acquired the ability to do this conversion, if indeed they accomplished it. So the district court could rule at any time that we've raised a serious question on those two issues, independently supporting and expanding the injunction, in which case we may end up before you again with similar issues. And I think a more complete record, both factually and legally, in terms of this interaction between contract claims and fiduciary duty claims, because we do think the best reading of the Delaware case law is not that these are two separate buckets. Do you have any indication that the district court is waiting for our action before it's moving? I have no reason to think that, Your Honor, no. No indication of that at all. Okay. So if we simply waited for the district court. I'm trying to, I understand that we basically have an agreement that we could continue the preliminary injunction, but we still have to have some authority to do that. And were we to rule, for example, that the district court was wrong in its legal ruling and made without prejudging anything coming down the pike, I'm not sure how we then keep the preliminary injunction in place. One way might be to do some sort of a limited remand for the purpose of deciding the, making clear to the district court that it can proceed. Yes. It seems to me, I suspect the district court will not wait terribly long on ruling on our preliminary injunction motions that are before. They have timing rules in place for how long that they take to rule on those things. And if the district judge rules in our favor on those, this appeal could become moot because it's supported by an independent legal ground. So I do think a ruling from the district court preceding this court's ruling is the more procedurally common-sense way for this to proceed. The Comar case, which is arguably in conflict with JEDMOP, keeps people from talking about fairness. It never actually uses the word fiduciary duty. Does it mean fiduciary duty? Do we know that it means fiduciary duty? Yes. Or could it be the breach of the covenant that you're trying to plead, the breach of the covenant of good faith and fair dealing? No, I don't think so, Your Honor. If you read that case, the Comar court actually rejected the plaintiff's contractual argument. The plaintiff argued that the defendant's actions were in conflict with the certificate as a contractual matter, and the court said no. We think that's a stretch to read the certificate the way you're reading it. But nevertheless, the heightened burden of entire fairness applies. And entire fairness in Delaware is analogous with it. It's just another way of saying this is the standard that applies to fiduciaries. Fiduciary relationships are governed by the entire fairness standard as opposed to the business judgment rule. But is the entire fairness standard equivalent to a breach of fiduciary duty issue? Fiduciaries are subject to entire fairness and must meet the entire fairness test as opposed to merely the business judgment rule. It's just curious because the words fiduciary duty are never uttered as such. Anyway, go ahead. Let me just ask another question about the Comar case. That also involved the circumstance of there being the timing of the cash-out merger, correct? I mean, that was in applying the entire fairness doctrine of fiduciary duty, although not as Judge Berzon said, it wasn't mentioned. It's a different factual circumstance than what we have here. There are some, it is slightly different, but I do not think that the driving factor there is about timing. The driving factor is that there was self-dealing, that the majority had both control and the ability to benefit financially at the expense of the minority. That's what drove the decision to use the entire fairness standard of review. Well, it said that the defendant-director stood on both sides of the transaction, fixed its terms, caused it to be effectuated. That's not the circumstance that we have before us here. Yes, but it also says that the majority stood to gain what the minority lost, and that is, that's the key to the conflict of interest. If the majority stands in a position to gain at the minority's expense, that's where the Delaware court consistently applied entire fairness standard of review. Tenedora tries to distinguish Comar solely on the ground that Tenedora here is exercising, claims to be exercising a right as a preferred shareholder. And as I've already said, we don't concede that at all, that they had any right to do this under the certificate, or as a factual matter, that they accomplished it properly according to the mechanisms that the certificate requires. That's a matter that's under the certificate. Well, that's your contractual claim, though. Yes, but, so first of all, they say apply contractual review, not entire fairness, because we had a contract right to do this, which is just simply circular. We don't think they had a contractual right to do this. But on the other hand, the other point is that none of these Delaware cases are focused on the majority defendant's contractual rights. They're saying, what is the right being asserted by the plaintiff? And there's no authority in Delaware that the defendant can get away with a self-dealing like this under the guise of the exercise of a preferred right. What's self-dealing? Self-dealing is that by purporting to exercise this conversion, which they may or may not have done correctly or they may or may not have had a right to do, they are directly, you know, this is neutral as to the company and as to any other shareholder. It's just simply a transfer of $3 million from minority shareholders to majority. That's self-dealing. And it's self-dealing because Tenedora had the ability to make this happen, whether they had a right or not, because they controlled the board. The conversion was an integral part of the merger. It was not a separate piece. It was in the board resolution authorizing the merger. The interested directors, there were not sufficient uninterested directors to approve this, approved that conversion as part of the merger itself in the board resolution. And then their CEO, who was also the shareholder representative and who answered directly to Tenedora, made it happen by paying the money to Tenedora as though the conversion had been properly converted. That's self-dealing. That's Tenedora dealing with itself at our expense. We are confident that ultimately when these two things come to, could be a motion for summary judgment or cross motions for summary judgment on the fiduciary claim and the contract claim, that our view of Delaware law is better. But if there's any doubt, the result of this appeal is indeed driven by the standard of review given the preliminary nature of this relief and the total lack of harm to Tenedora. But again, with regard to the standard of review, we're not deferential on the legal question, are we? You're deferential on whether or not there's a serious question. Not on an ultimate legal ruling, no. Certainly not. And not on whether the district court properly balanced, applied the test correctly, whether it applied the winter factors correctly. All of those things are subject to de novo review. But the legal question here is not is there a fiduciary claim that can sit alongside a contract claim. There's tension in Delaware law on that point. I concede it's not clear for us. There's reasoning that goes both ways. But isn't the district court. But if we thought that wasn't true. The district court thought there was a serious question. He didn't say we win on that point. Right. But if we thought that Delaware law was clear, then we would say we would rule directly on that legal question. Well, what you're saying is, is that the district court, you know, has this case that it's complex. On the surface, it appears that there were some shenanigans going on here. And your clients suffered a $3 million loss. They didn't control this company. The other folks did. And there's currents going in different directions. And there's certain equities in here. And it's really best left to the district court to iron all that out. That's exactly right, Your Honor. It really comes down to, because there's factual issues here. There's fiduciary issues. And to me, I would think that the standard would be, looking at the whole case, that the district court used his discretion. Yes. And that's exactly the way. And I don't think he did. That's exactly the way this court treated this sort of issue in the Southwest Voter Registration case, which was an en banc case reviewing a preliminary injunction. And there, the plaintiff had said, we have an equal protection claim here. And a panel of this court said, we agree. We think that you do have a serious question on an equal protection claim. And this court en banc said, well, the district court didn't think so. And we defer to the district court's opinion on whether or not there's a serious question here. And so affirmed the district court's ruling on that point. So it is subtle. Standards and review points can sometimes get highly philosophical, it seems. But this is not summary judgment. This is not an end run around Rule 56. We are entitled to an opportunity to a ruling from the district court on this legal issue on a fully briefed legal and factual record. So I think at this point, the preliminary injunction should stand. Have depositions been taken? Not yet, Your Honor. Probably coming up next month. All right. Thank you. Just a few quick points I'd like to respond to. There might be factual issues about a lot of other things. But there are no factual issues. You know, this whole thing sounds funny to me. But we have lots of them. The clients have control and they jump in there and they pull the money out and they convert. They lose on some, they gain on others. We have lots of factual and legal. And they've got the power. We've had our arguments on those points. And they have the power. And they're exercising it. And they're taking advantage of it. And what's at issue in this appeal is the conversion. One of the purposes of the corporation law is to protect shareholders. The conversion. You know that, don't you? Certainly in general. That's the first thing I learned from Professor Ballantyne. That's a general proposition. But the issue here, the factual issue of which there is no factual dispute, is the conversion. That's the only thing that the injunction rests on. And it's a pure legal issue. And this court does not defer on pure legal issues. Even the Southwest voters case says that itself. It says we do not. I don't know that that's a purely legal issue. There's no factual dispute that that conversion occurred, okay? Well, when you come down to fiduciary duty and... What this case law says is there is no fiduciary duty claim on those facts. That's exactly what it says. In fact, one of the cases in the footnote in the Chuck Trados case... Well, how do you know if you haven't had discovery, if you haven't gotten into the full panoply of the issues here... Because it's undisputed... ...and into the guts of it, huh? It's undisputed that it occurred. The conversion occurred. And the proceeds were distributed accordingly. We admit that. That's exactly what happened. Nobody disputes that. The conversion occurred, you know. Yes. Yeah, you know. And we're saying that... It's a fait accompli, so we should just accept it. And we're saying that can never breach fiduciary duty. That's what the law says. It has to be analyzed under contract. And this injunction only rests on fiduciary duty. If you look at the Rosanne case, which is cited in footnote 10 of Trados, 190 Westlaw 13482, that concerned a liquidation preference. And the Court said, because these are, quote, centered around the liquidation preference, they are therefore, quote, with respect to matters relating to preferences, close quote, citing Jedwab, and we cannot apply a fiduciary duty analysis to them. That's exactly what's happening here. I mean, isn't the more nuanced question... Was that on a motion? It was a motion to dismiss, Your Honor. Motion to dismiss. In which case? In the Rosanne case. Well, we were wrong in the way they handled that. So certainly there are factual issues about the stuff before the district court right now, which has been brought up in oral argument, which is not on the record before this court, but that's not what we're talking about here. We're talking about the conversion. So your view of it is, is that the only issues before the court is the actual stock conversion, and the question is, can that constitute a breach of fiduciary duty? And your answer to that is no. Correct. And that's the only portion of it that is being contended as a breach of the fiduciary duty. That's the only thing that... The conversion of the stock. That's the only thing that Judge Moskowitz relied upon. That's the only thing that we appealed. That's the only thing we could have appealed. That's the only thing before the court right now. Two questions. One is, is the law regarding fiduciary duty and preferred stockholders somewhat more nuanced than you may have suggested here before in that it depends what the nature of the fiduciary duty claim is? In other words, whether it's a failure of due care kind of a claim or a self-dealing kind of a claim? Does that matter? I'm not quite sure how to respond to that. I do know it does seem pretty clear if you're dealing with a preferred right that there is no fiduciary claim. It's purely a contract. Putting that aside, in general, there are different types of fiduciary claims. Well, that's what I just said. Right. But one of the reasons why... So I'm asking whether one way to reconcile the case law is to say that when you're claiming that the preferred stockholders, that's one thing, but when you're claiming that they were essentially favoring themselves and purposely... That's impossible to reconcile with GEDREB because GEDREB and Footnote 6 and also this Rosanne case have the thing where the board and the majority shareholder were accused of, quote, manipulating the corporate machinery, which is a fiduciary duty claim, to prevent a redemption or in this case an automatic or a liquid issue preference from being given to the preferred shareholders. And the court said you can't do that. Then my second question is there seems to be some confusion about whether it's the minority stockholder, whether this doctrine applies when the minority stockholders are preferred shareholders or when the majority are preferred shareholders or both. Right. Well, certainly in GEDREB the plaintiffs were minority preferred. Right. Just as in here. And Mr. Krikorian, who was the controlling shareholder and a defendant, was also the majority shareholder than preferred, just like here. Mm-hmm. Well, what if the second weren't true? I'm sorry? What if the second were not true? So, hypothetically, if... Well, what if the first were not true but the second was true? So what if only the... I'm sorry. Only the minority, only the majority stockholders had preferred stock. Well, then this issue wouldn't be before the court because the minority wouldn't have been hurt by the conversion because the majority would have had it only to itself. Okay. What is this 15 percent ownership interest that would go to the plaintiffs absent a preliminary injunction? What's that all about? I'm sorry. Where is that coming from, Your Honor? I'm talking about the 15 percent ownership that... Oh, well, we just pointed out in our brief that one of the effects of the conversion was that common shareholders who would have received nothing without the conversion because the liquidation preference would have eaten up all of the proceeds before it got around to them did receive something, whereas otherwise they wouldn't. It's just a factual issue that we did point out in our brief. It's not necessary to support the argument that we're making under JEDWAB. Is there a Delaware Supreme Court case about the preferred stockholders? Well, yes, Alta Berkeley. And then also, in fact, JEDWAB is cited in, and we put this in footnote three in our reply brief. Was the, you keep talking about Alta Berkeley, but did anyone raise the issue of whether there was a fiduciary duty? No, even though the lawyer who brought it is one of the most prominent lawyers in Delaware. That's not a very good argument. What is that? Well, I think it shows you considering how... Is that a smart guy knows you don't bring that claim? Trados tells you these provisions are ubiquitous, okay? Any VC company, these two provisions exist. And yet in all of these millions of Delaware cases that there are out there, the only one that comes up is... But the short answer to the question of is there a Delaware Supreme Court case? Cites JEDWAB on this point? Yes, NEMIC. We cite that in footnote three in our reply brief, 991A2nd, 1129 at note 33. I never had that. What does that say? It cites JEDWAB for the proposition that when you're dealing with preferred rights that they're analyzed only under contract. And that was an issue in the case? I'm sorry? That was an issue in the... It was at least discussed in the case and cited for that proposition. But the answer is there is no holding of a Delaware Supreme Court case that says this. Well, yeah. JEDWAB has been around since 1986. All right. But that's not all that. I'm just trying to get a straight answer to my question. There is none. I mean, it's relevant because ultimately our role is to follow the Delaware Supreme Court and if not, to predict what the Delaware Supreme Court would do. But we're not bound by JEDWAB or any of these other lower court cases. It is in NEMIC and realize that the Delaware Supreme Court, there is no intermediate appellate court there. So people can appeal anything as of right to that court. And this has been around since 1986. And there are at least 15 cases. All right. But that goes to the prediction. But the answer to my question is no. It depends on, I guess, how you interpret that footnote that I just cited you to in NEMIC.  Thank you. All right. Thank you. Thank you so much, Your Honor. All right. The matter is submitted. And we'll go to the next matter. Miranda Leticia Lopez v. Eric Holder. I think that was submitted. What? I think that was submitted. What did you say? I believe that was submitted. Oh, that's submitted. Okay.
judges: Amon, Pregerson, Berzon